UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
OPEN RIVERS MEDIA GROUP INC. D/B/A/ )
OPEN RIVERS PICTURES                )
ALVIN WILLIAMS AND TAMMY WILLIAMS    ) Civil Action No.
        Plaintiffs                  )
                                    )
v.                                  )
                                    )
SOUTHERN FILM REGIONAL CENTER LLC,  )
DOMINIC "NIC" APPLEGATE,             )
GATES INDUSTRIES LLC,                )
MAURICE ANDERSON,                    )
RATLIFF ENTERTAINMENT LLC    AND     )
THEOPHILUS RATLIFF                   )
        Defendants                  )
                                    )
_____

## JURISDICTION

1. Personal Jurisdiction is predicated on the federal question.

2. Upon information and belief, the amount in controversy exceeds in excess of One Hundred Thousand Dollars ($100,000.00).

## PARTIES

3. Open Rivers Pictures Media Group Inc., d/b/a Open Rivers Pictures ("Pictures") located at 461 Sandy Creek Road Fayetteville, GA 30214.

4. Alvin and Tammy Williams ("Williams") have a business address of 461 Sandy Creek Road Fayetteville, GA 30214.

5. Southern Film Regional Center LLC ("Regional") 455 Glen Iris Drive, Suite B, Atlanta, GA 30308.

5. Dominic Nic Applegate ("Applegate") 455 Glen Iris Drive, Suite B Atlanta, GA 30308.

6. Gates Industries LLC (also ("Applegate" or "Regional") has a business address at 455 Glen Iris Drive, Suite B, Atlanta, GA 30308.

7. Ratliff Entertainment LLC ("Entertainment") has a business address at 1180 Mount Paran Road Atlanta, GA 30327.

8. Theophilus (Theo) Curtis Ratliff ("Ratliff") has a business address of 1180 Mount Paran Road, Atlanta, GA 30327.

9. Maurice Anderson ("Anderson" or "Entertainment" or "Ratliff") has a business address of 1180 Mount Paran Road Atlanta, GA 30327 and a residential address of 1222 Crestwood Lane, Atlanta, GA

## FACTS

10. On January 21, 2014, Pictures signed a contract with Regional to assist, manage, and prepare an EB5 Application for Pictures. Regional works with the

Office of Homeland Security, The Securities Exchange Commission (SEC) and the U.S. Citizens and Immigration Services (USCIS) in order to have international investors fund U.S. Company ventures to assist in international persons becoming U.S. citizens. For its services, Regional signed an engagement letter.  See Exhibit "A".

11.     Regional was paid One Hundred Thousand Dollars ($100,000.00) by Pictures. See Exhibit "B".

12.     Also in January 2014, Entertainment signed an Investment Agreement with Pictures to share in the profits and proceeds of the EB5 Application. Entertainment is owned by former NBA player Theophilus ("Theo") Ratliff, a former executive in the NBA Players Union.  Pictures and Entertainment intended for its partnership to continue in perpetuity.  A Press Release about the partnership was issued in January 2014.

http://www.prweb.com/releases/2014/03/prweb11686525.htm See Exhibit "C".

13.     In February-June 2014, Regional, Applegate, Entertainment and Ratliff engaged, in a scheme to remove Pictures from the EB5 Application process and convert the activities undertaken by the parties for their benefit and to the detriment of Pictures.

14. Despite receiving One Hundred Thousand Dollars ($100,000.00) from Pictures, Regional decided to abandon Pictures EB5 Application and intended to create its own EB5 business with Ratliff, Entertainment and other NBA players and former NBA players. Regional and its owner Applegate had substantial financial difficulties which is apparent by Applegate's bankruptcy filing in 2011. Exhibit "D". Regional and Applegate saw an opportunity to receive millions of dollars and Ratliff and Entertainment joined them in the attempts to remove Pictures from the business dealings. In June 2014, Entertainment sent a letter to Pictures attempting to rescind the contract with Pictures due to the conspiracy and enterprise it developed with Regional and Applegate. There is not at by May 2014, all the defendants were working together deceitfully to harm Pictures.

15. Applegate is a dubious businessman and along with Regional, Entertainment and Ratliff, began to exclude Pictures from the business Pictures was creating to support its EB5 Application.

16. For example, all the parties in April 2014 met with Hollywood film producer Reuben Cannon ("Cannon") who is known for his work with Tyler Perry Studios. Reuben Cannon's film production credentials include the films "Deliver Us From Eva" "Johnson Family Vacation" "Meet The Browns" "Why Did I Get Married" "Why Did I Get Married Too" "Daddy's Little Girls" "Madea Goes To Jail" and

many other film and television credits. Cannons films have produced in excess of One Hundred Million Dollars ($100,000,000.00) in profits.

17. In April-May 2014 Cannon was preparing to fund several additional films and specifically informed Pictures, Regional and Entertainment about the film "Love Jones 2" which would star Lorenz Tate and Nina Long, the stars of the original film.

18. Soon after, Regional, Entertainment, Applegate and Ratliff, excluded Pictures from meetings with Cannon and attempted to steal the business opportunity for themselves. The defendants informed Cannon that there was a falling out and that Pictures was removed from the business opportunity. The defendants simply lied to Cannon.

19. In an email dated May 28, 2014, Regional informed Pictures that it would not be moving forward with the EB5 Application. See Exhibit "E".

20. Regional's decision to abandon and harm Pictures appears squarely related to its budding relationship with Entertainment an investor in Pictures.

21. Upon information and belief, (1) Applegate has defamed Pictures and the Williams family (2) Ratliff and Applegate has conspired to damage Pictures and its EB5 Application (3) Ratliff and Applegate have been working together to damage

Pictures, (4) that Applegate and Regional has interfered in the business relationship between Ratliff/Entertainment and Pictures which lead to the conspiracy to damage Pictures (5) violated the Georgia RICO Act; (6) violated the Federal RICO Act and, (7) used false representations and omissions to commit fraud to induce payment from Pictures and damage Pictures in its business. The defendants also lied to Cannon in furtherance of its enterprise.

22. The facts clearly indicate that your actions have derailed the EB5 Application for Pictures and the expected Forty-Five Million Dollars ($45,000,000.00) in funding as discussed by Applegate, Ratliff and Pictures. Attempts to defraud Pictures from this opportunity will not be tolerated. The defendants have informed third parties that Pictures was no longer involved in the EB5 Application which was fraudulent and designed to take a business opportunity for the Defendants. The defendants have engaged in a pattern of criminal activity in the scheme designed to harm Pictures.

23. Applegate and his entities/colleagues were paid to complete the EB5 Application and received One Hundred Thousand Dollars ($100,000.00) for the work. Despite this payment, Regional and Applegate subsequently on June 23, 2014, told Pictures, that it NEVER received the One Hundred Thousand Dollars ($100,000.00) payment. See Exhibit "F".

24.     The facts clearly indicate that (1) Applegate and Regional has defamed Pictures and the Williams family (2) Ratliff, Regional and Applegate and his entities have conspired to damage Pictures and its EB5 Application (3) Ratliff and Applegate have been working together to damage Pictures, and; (4) that Applegate has interfered in the business relationship between Ratliff and Pictures which lead to the conspiracy to damage Pictures.

25.     These actions have derailed the EB5 Application and the expected Forty-Five Million Dollars ($45,000,000.00) in funding as discussed by Applegate, Regional, Entertainment, Ratliff and Pictures.

## COUNT I
## BREACH OF CONTRACT
## AGAINST REGIONAL

26.     Plaintiffs' reallege paragraphs 1-25 and 74-79 below.

27.     Regional entered into a contract with Pictures.

28.     Defendant breached the contract and attempted to obtain the benefit of the contract, an expected Forty-Five Million Dollars ($45,000,000.00) in EB5 funding.

29.     Regional breached its duty to Plaintiff and failed to honor the contract.

30.     Regional harmed Pictures in its business.

## COUNT II
## VIOLATION OF RICO
## (Racketeer Influenced and Corrupt Organizations Act)
## AGAINST ALL DEFENDANTS

31.     Plaintiffs' reallege paragraphs 1-30.

32.     Under federal RICO law a "person damaged in his business or property" can sue one or more "racketeers". The plaintiff must prove the existence of an "enterprise". There must be one of four specified relationships between the defendant(s) and the enterprise: either the defendant(s) invested the proceeds of the pattern of racketeering activity into the enterprise; or the defendant(s) acquired or maintained an interest in, or control over, the enterprise through the pattern of racketeering activity; or the defendant(s) conducted or participated in the affairs of the enterprise "through" the pattern of racketeering activity; or the defendant(s) conspired to do one of the above. In essence, the enterprise is either the 'prize,' 'instrument,' 'victim,' or 'perpetrator' of the racketeers.

33.     Defendant Applegate, the CEO of Regional has a history of having RICO claims filed against him. See Exhibit "D". Applegate has engaged in the violation of RICO his dealings with the plaintiffs.

34.     Regional, Applegate, Enterprise and Ratliff committed theft by conversion and deception, used false representations and omissions to commit fraud and attempted to convert and steal business opportunities from Pictures.  Regional has

converted One Hundred Thousand Dollars ($100,000.00) of funds that belong to Pictures. The parties engaged in a scheme to defraud Pictures out of a business opportunity in which all the parties expected to receive Forty-Five Million Dollars ($45,000,000.00). Obtaining the business from Cannon was one of the initial steps in the scheme as they removed Pictures from the negotiations to steal the business opportunity.

35. The defendants have harmed Pictures.

## COUNT III
## VIOLATION OF GEORIGA RICO
### (Georgia-Racketeer Influenced and Corrupt Organizations Act)
### AGAIINST ALL DEFENDANTS

36. Plaintiffs' reallege paragraphs 1-35.

37. O.C.G.A. § 16-14-2 , The Georgia RICO statute provides that it is unlawful for any person, through a pattern of racketeering activity or with the proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money. It is unlawful for any person employed by or associated with any enterprise to participate in such enterprise by engaging in a pattern of racketeering activity.

38. "Pattern of racketeering activity" is defined as engaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents.

39. "Racketeering activity" is defined as committing, attempting to commit, soliciting, coercing, or intimidating another person to commit any of a number of Georgia criminal offenses.

40. In 1996, the Georgia Court of Appeals in Sevcech v. Ingles Markets, Inc., 222 Ga. App. 221, 474 S.E.2d 4 (1996) held that in order to bring a civil or criminal claim under the Georgia Racketeering Influenced and Corrupt Organizations Act (Georgia RICO Act), the plaintiff or prosecution must prove that the crimes were committed with a motive to receive financial gain.

41. The defendants' have (1) conspired to harm Pictures, (2) abandoned Pictures EB5 Application to secure financial benefits for themselves (3) interfered in the contractual relations between Pictures and Entertainment (4) defamed Pictures and its officers (5) unlawfully retained the funds provided to Regional

and (6) lied to third parties in furtherance of its scheme to defraud Pictures. The defendants' actions were committed for financial gain.

42. These actions have harmed Pictures in its business.

COUNT IV
FRAUD
AGAINST ALL DEFENDANTS

43. Plaintiffs' reallege paragraphs 1-42 and 48-80 below.

44. In Georgia, there are generally two types of fraud: actual fraud and constructive fraud. There are five (5) key elements: (1) a false representation by the defendant; (2) knowledge that the representation is false or with reckless disregard as to whether it was true; (3) an intent to induce you to act or refrain from acting based on the knowingly false representation; (4) reasonable reliance by you on the knowingly false representation; and (5) damage done to you because you reasonably relied on the false representations made by the defendant. Georgia courts have recognized that fraud is, itself, subtle and therefore slight circumstances, and their supporting facts are sufficient to support a claim.

45. The defendants' in addition to paragraphs 48-80 below  (1) falsely represented that it would complete the EB5 application for Pictures as part of the scheme to steal business from Pictures and informed third parties that Pictures was

removed from the implementation associated with the business concepts that were part of the EB5 application  (2) the defendants knew the representations were false and attempted to end the relationship between Pictures and Entertainment as part of the plan to build the business of Entertainment with Applegate/Regional (3) informed Pictures that it was ceasing all actions associated with Pictures EB5 application and removed Pictures from all discussions with Cannon (4) Pictures relied on the representations of the defendants, namely Applegate/Regional,  to conclude the EB5 application and securing the funds to complete the  business opportunities presented to Pictures and (5) Pictures were damaged by the actions of the defendants.

46. All the defendants conspired to defraud Plaintiffs of monies paid and business opportunities created by Pictures. The defendants' scheme included misrepresentations, lies, conversation, theft in destroying Pictures EB5 Application and business. The actions of the defendants were maliciously, willful and designed to harm Pictures.

47.   As a direct and proximate result the defendants scheme to defraud Plaintiffs, Pictures has been damaged in an amount to be determined at trial, but in no event less than Forty-Five Million Dollars ($45,000,000.00).

## COUNT V
## NEGLIGENT MISREPRESENTATION
## AGAINST ALL DEFENDANTS

48. Plaintiffs' reallege paragraphs 1-47.

49. The defendants' have all engaged in misrepresentations to defraud Plaintiffs of monies paid and business opportunities created by Pictures.

50. The actions of the defendants' were negligent and without regard for any harm to Pictures.

51. As a direct and proximate result the defendants' negligent actions, Pictures has been damaged in an amount to be determined at trial, but in no event less than Forty-Five Million Dollars ($45,000,000).

## COUNT VI
## WILLFUL MISREPRESENTATION
## AGAINST ALL DEFENDANTS

52. Plaintiffs' reallege paragraphs 1-51.

53. The defendants' have all engaged in misrepresentations to defraud Plaintiffs of monies paid and business opportunities created by Pictures.

54. The actions of the defendants were maliciously, willful and designed to harm Pictures.

55. As a direct and proximate result the defendants scheme to defraud Plaintiff, Pictures has been damaged in an amount to be determined at trial, but in no event less than Forty-Five Million Dollars ($45,000,000).

## COUNT VII
## CONVERSION
## AGAINST REGIONAL AND APPLEGATE

56. Plaintiffs' reallege paragraphs 1-55.

57. Defendants' have taken, converted and utilized Plaintiff's monies for their own benefit. The Defendants have funded its operations at the expense of Pictures in violation of the contract signed by the parties.

58. Defendants' unlawfully utilized and converted the funds of Pictures.

59. As a direct and proximate result of Defendants actions, Pictures have been harmed in the sum of One Hundred Thousand Dollars ($100,000.00) and loss of expected profits.

## COUNT VIII
## DEFAMATION
## AGAINST REGIONAL, APPLEGATE
## RATLIFF AND ANDERSON

60. Plaintiffs' reallege paragraphs 1-59.

61. The defendants' have published and stated derogatory and untrue comments about the Plaintiffs which harmed plaintiffs in their business. See Exhibit "G".

62. The actions of the defendants have damaged the reputation of the Plaintiffs and specifically with Cannon and BET.

63. The actions of the defendants' were designed to obtain a business opportunity and discredit Pictures.

64. The actions of the defendants' were done with malice and disregard for the truth.

65. The defendants' actions have damaged the Plaintiffs.

66. Regional and no reason to contact Entertainment and disclose any financial information.  Regional knowingly published false statements which lead to Entertainment attempting to rescind its contract with Pictures.

67. Pictures has been harmed by the actions of the defendants.

## COUNT IX
## INTERFERENCE WITH CONTRATUAL RELATIONS
## AGAINST REGIONAL AND APPLEGATE

68. Plaintiffs' reallege paragraphs 1-67.

69. The defendants' have published and stated derogatory and untrue comments about the Plaintiff which harmed plaintiff in its business with Entertainment.  See Exhibit "G".

70. Regional and Applegate and no reason to contact Entertainment and disclose any financial information.   Regional knowingly published false statements which lead to Entertainment attempting to rescind its contract with Pictures.

71. Regional and Applegate and no relationship with Entertainment or Ratliff before Entertainment invested in Pictures. The defendants were aware of the contract between Entertainment and Pictures.

72. Regional and Applegate willingly and knowingly harmed the relationship between Entertainment and Pictures.

73. Pictures have been harmed by the actions of Regional.

## COUNT X
### BREACH OF CONTRACT AGAINST RATLIFF AND ANDERSON

74. Plaintiffs' reallege paragraphs 1-73.

75. In December 2013 Ratliff and Anderson signed a Non-Disclosure Non Circumvention Agreement ("NDA") with Alvin Williams, an owner of Pictures. See Exhibit "H".   Applegate and Regional were notified of the signed NDA. Ratliff and Entertainment after, completing the Agreement with Pictures.

76. From February through July 2014, Ratliff and Anderson circumvented Williams and Pictures not only with Cannon and in their activity with Applegate/Regional, but with Black Entertainment Television ("BET").

77. Pictures through Williams, was negotiating with BET in 2014 to create content, produce content for BET and a long-term lease on a new soundstage. All the defendants were on notice of the negotiations. However, once all the defendants began to engage in their unlawful actions they circumvented Williams and began to communicate directly with BET and attempted to create their own business relationship with BET. The defendants' actions were intentional, designed to harm and done in continuation of its knowing misrepresentations, defamation and fraudulent activities. All the defendants made false statements to BET about Pictures and Williams. In July 2014, BET stopped communicating with Williams about the business opportunities due to false, defamatory statements made by the defendants' to BET about its business.

78. During the same timeframe, Ratliff, Anderson, Applegate and Regional, hosted BET executive Loretha Jones ("Jones") and walked BET through the Pinewood Atlanta Studios that was to be the subject of the EB5 application of Pictures. Jones was the same BET executive that was negotiating with Williams and had a face to face meeting with Williams. Williams and Pictures were never

informed of this activity by the defendants. Ratliff and Anderson with the assistance of all the defendants circumvented the NDA and breached the contract.

79. Entertainment and Ratliff, almost immediately after beginning its business with Pictures, began demanding funds from Pictures or Entertainment would cease its business relationship and harm the business. See payment to Anderson dated January 31, 2014 at Exhibit "I". Pictures had already paid Regional One Hundred Thousand Dollars ($100,000.00) to complete the EB5 application and needed to move forward in its business. Such actions constitute a breach and foreshadowed the unscrupulous business activities of Entertainment, Anderson and Ratliff. After making the payment at Exhibit "I" Pictures did not make any additional payments to Entertainment/Anderson/Ratliff. The relationship between the parties fell apart soon after.

80. Pictures and Williams have been harmed by the actions of the defendants.

**WHEREFORE,**

The Plaintiffs demand,

1. Judgment on all counts;
2. Interest;
3. Demand a judgment in excess of Forty-Five Million Dollars ($45,000,000.00).

4. Attorneys Fees; and,

5. Any other relief this Court deems just and equitable.

PLAINTIFFS DEMAND TRIAL BY JURY

This __11th__ day of March, 2015.

        OPEN RIVERS MEDIA GROUP  INC. D/B/A/
        OPEN RIVERS PICTURES, ALVIN
        WILLIAMS AND TAMMY WILLIAMS
        By their Attorneys,


*/S/ Daniel Kane. P.C.*
Daniel Kane
Daniel Kane, P.C. & Associates
133 Nassau Street
Atlanta, GA 30303
404-577-1200


*/S/ Christopher L. Brown*
Christopher L. Brown
Brown & Rosen LLC (National Counsel)
Not Admitted in Georgia
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
617-695-3202 (F)
cbrown@brownrosen.com